## FARNSWORTH *versus* RICHARDSON.

The writ *de homine replegiando* lies only for the benefit of a person, unlawfully restrained of liberty.

It cannot be used for the benefit of another person, although such other person may have, by contract, a lawful claim to his services or society.

If a father, after making an assignment of the services or society of his minor child, have retaken the child into his own keeping, the remedy of the assignee, (if any he have,) is not by replevin, but by action on the contract.

Whether such an assignment can be valid; *quære.*

On Exceptions from *Nisi Prius*, Rice, J., presiding.

Replevin of a person.

The writ required the officer to replevy "Harriet M. Richardson, who sues this action in the name of Nancy Farnsworth."

Harriet M. Richardson is a child, under the age of four years, and is the daughter of the defendant and grand daughter of Mrs. Farnsworth, in whose name this suit is brought. By virtue of the writ the child was taken from its father and delivered to its grandmother.

Mrs. Farnsworth, to show her right to this action, offered to prove that the child, upon the death of its mother, and when it was but a few days old, was given and delivered to her by the father, and that, after residing with her for a season, was taken and kept by the father, who claimed to control it as his own, and refused to let it reside with Mrs. Farnsworth. This evidence being objected to, was excluded by the Judge, and a nonsuit was ordered; to which ruling the plaintiff excepted.

*Evans*, for the plaintiff.

The question is upon the rejection of the evidence offered. The decision of the Judge does not indicate the ground of the rejection, whether because of any error in the form of the action, or whether the contract, offered to be proved, was not of a character to give to the plaintiff a right to the custody of the child.

I. The plea is *non cepit* with a brief statement, putting an issue *of fact* to the jury.

Farnsworth v. Richardson.

Therefore the question whether this form of action will or will not lie, *in the name of the plaintiff*, does not arise. If this form of action is not maintainable, there should have been a demurrer or a plea in abatement.

If the plaintiff cannot sue, it should be shown in abatement. Not being so pleaded, it is waived. Eastman's Dig. Abatement, 3 b., § 4, 6, 7; *Savage Man. Co.* v. *Armstrong*, 17 Maine, 34; *Trustees of Dutton* v. *Kendrick*, 12 Maine, 381; *Soc'y for Gospel* v. *Pawlet*, 4 Pet. 480. Such was the form of action in *Wright* v. *Wright*, 2 Mass. 109.

II. The object of the evidence offered was to show a contract fairly and deliberately made between the parties, upon good consideration, whereby the defendant waived and surrendered his parental rights to the plaintiff.

1. The rejection of the evidence raises the question whether such a contract is binding upon the defendant, and whether, by virtue of it, the plaintiff is entitled to the custody of the child.

By the evidence rejected, the plaintiff offered to prove all the elements of a valid contract; one fairly and deliberately made; by parties competent to contract; upon good consideration; upon a subject neither illegal nor immoral; having a fit and meritorious object, the accomplishment of a great good; the permanent benefit of the child.

It must be assumed that the plaintiff is willing and suitable in every respect, to support and educate the child, and that she has violated none of the agreements on her part.

The objection to it is, that the law will not allow a father thus to dispose of his minor children, and the reason offered is, that he is under obligations, of which he cannot divest himself, for their support and education. Parental rights, it is said, result from parental duties.

But may not one waive or release *rights* without thereby freeing himself from obligations?

Repeated decisions have settled that parents may emancipate minor children, so as to lose all right to their earnings, and judicial tribunals are allowed to infer such emancipation, often from slight circumstances.

But it has never been held that, in such cases, the father is released from his obligations to support the child, whenever support is needed.

Fathers are allowed to give, or sell, to children under age, their time till majority, and the courts have sustained it. *Withington* v. *Nightingale*, 15 Mass. 275 ; *Whiting* v. *Earle*, 3 Pick. 201.

It is not supposed, however, that the father is thereby free from the duty imposed by law on parents, should the child require its performance.

As between the father and the person who agrees to receive and support the child, the father would be free.

In the present case, can the plaintiff maintain an action against the father for the maintenance of the child ? Would it not be a perfect defence, that by the agreement, she was bound to support and educate it at her own expense ?

2. The contract is not within the statute of frauds : — 1st. Because this is not an action brought upon the contract. — 2d. Because there has been performance on behalf of the plaintiff.

3. Nor is it void by reason of being against public policy. On the other hand, public policy requires such contracts to be upheld. It affords opportunity to provide for the support and education of those, who might otherwise grow up in poverty and ignorance.

Nor is there any danger that the power of thus disposing of children will be abused.

Generally, natural affection will restrain a father from parting with his child, unless it be for the good of the child. If his expectations are disappointed and the *quasi* parent fail to perform his duties, the Court have ample power to remove the child from his custody and restore him to the father or other friends. The remedy for the correction of any abuses in such cases, is prompt and decisive.

It may be urged that the duties which are incumbent on a father towards his children are *personal* and not assignable. But may not a parent contract for the education and sup-

port of a child, and is it not often done ? Are not children often sent from home for long periods, for purposes of education, health or improvement in worldly prospects ? Are they not under the entire discipline and control of guardians and teachers ? And if this may be done for *years,* why not during minority ?

Could he refuse to pay for the nurture and instruction of his children, on the ground that a contract to that end, was void, being on a matter not allowable ?

If not, then it is lawful for a father to provide for the support, education, control and discipline of a child by others ; and this is done in a vast number of cases.

The education and bringing up of a child is not therefore a *personal* trust.

4. It is not denied that, by law, *generally,* the father is entitled to the custody of the children ; but it is denied that it is *universally* so. There are many exceptions, as where the father is an unsuitable person, from his character, or habits, or inability ; or where the age or health, or other circumstances of the child, render it unfit.

The law was formerly more stringent than it is now, and more so in England even now than here.

The child now is regarded not merely as the child of the father, but also as the child of the State. Society has found out that it has a deep interest in its welfare and in many instances withdraws it from the father's control.

The well-being of the child is now the leading consideration in determining with whom, among conflicting claimants, it shall remain.

How can this be so, if the right of the father is of the stern, unyielding, inalienable character, contended for ?

The parental right may be forfeited by misconduct, or by poverty. Why may it not be waived or surrendered ?

The common law rule of the absolute control of the father, has been much modified and shaken by American decisions, and even in England has been the subject of legislative inquiry. Kent's Com. 194, (195,) note c.

The principles we contend for are recognized and establish-ed by many cases. *State* v. *Smith*, 6 Greenl. 464 and 466 ; *In re M. E. Waldron*, 13 Johns. 418 ; *Commonwealth* v. *Addicks*, 5 Binney, 520 ; *U. S.* v. *Greene*, 3 Mason, 482 ; *Morse* v. *Welton*, 6 Con. 550 ; 6 Barbour, 368; *Pool* v. *Gott*, Law Reporter, Sept. 1851, p. 269.

The statute respecting apprentices does not take away the common law right of the father, to dispose of his children. *Day* v. *Everett*, 7 Mass. 145.

*Emmons* and *Paine*, for the defendant.

HATHAWAY, J. — The question presented by the exceptions was decided by the Court in the case *Richardson* v. *Richardson*, 32 Maine, 560.

If the defendant made a contract with the plaintiff, by which he transferred to her the care and control of his child, an action on the contract would be the proper remedy for any injury to her, caused by a breach of it, on his part. *Bridges* v. *Bridges*, 13 Maine, 408.

*Exceptions overruled, and nonsuit confirmed.*

SHEPLEY, C. J., and WELLS, HOWARD and APPLETON, J. J., concurred.